2010-7053 KOKESCH v. DVA Mr. Bozner, whenever you're ready. Mr. KOKESCH v. DVA Mr. KOKESCH v. DVA  Your Honor, in view of the... Mr. Kokesch's appeal raises issues of the duty to assist under VA's... under the VCAA Section 38... Title 38, Section 5103 Cap A pertaining to records and to medical examination. In view of the sort of at least temporary uncertainty about the gist of our argument on the medical exam issue, I'd like to begin with that one, the reverse order of the way they were in the briefs, if I may. I'd like to stress that that issue is independent of anything that the Court or the Board found concerning Mr. Kokesch's tale about what happened to him in service. The statute provides that a VA is required to provide a medical examination or opinion when the evidence is insufficient to resolve the claim, but there's evidence of current disability and an indication that it may be associated with service. In this case, we had evidence from doctors, statements from doctors that said... established essentially, Mr. Kokesch went into service healthy, he came out unhealthy, and continued to decline medically over a period of years. In addition... Shouldn't there be a connection between his time in service and the medical condition subsequent? I'm sorry, I didn't hear the first part. I didn't see any evidence in the record to show that there was a connection between his time in service and the final medical determination of his many maladies. How were they connected to his service? Any doctor would say that they were because of his service time. The doctors don't actually get that far, Your Honor. The board was absolutely correct, and we certainly don't contend, that the statements by the doctors were sufficient in and of themselves to establish service connection. That is, they did not establish nexus. Our fight before the Veterans Court was, and what we think the Veterans Court ignored was, the evidence indicates that there may be an association because the doctors suggest that he went in healthy, he came out unhealthy, and they also comment that his symptoms looked a lot like Mr. Kokesh was not in the Gulf War. So there's a suggestion that they may be associated with service, and our contention is simply that that requires VA to go get him an exam to evaluate the issue of nexus, the question of nexus. And the VA didn't do that. The board rejected the doctors' opinion simply by saying they assumed that the doctors relied on Mr. Kokesh's account of these rather peculiar events in service that he says happened, and there's no indication actually that the doctors did, in fact. There's no mention of his story about that in their statement. Isn't that a question of fact or application of law to fact beyond our jurisdiction? Your Honor, our contention before this court is simply that the Veterans Court didn't get to the issue, and the Veterans Court stopped its analysis after it said, we don't find any fault with the board's determination that Mr. Kokesh's account of these events was not credible. So the court at that point said there's no way that the veteran can establish the second prong of McClendon, that is the indication of something that happened in service to which these symptoms could be related. There was a factual analysis. But, Your Honor, there's no factual analysis required by this court because the facts are in the record. There's no dispute, and the board did not reject his account of his symptoms. There are service medical records indicating that he had some sickness while he was in service. He was only in for six weeks, and he's in sick call half a dozen times for various maladies. So the evidence is there. The Veterans Court simply didn't get to it and didn't look. We're simply asking this court to say that was error, that the Veterans Court analysis stopped short of where it needed to go to consider the other independent basis for getting him a medical exam. And so there's no resolution of any fact situation required, and actually those facts are not in dispute so far as they go. Is there any indication as to why he was discharged after six weeks? There is, Your Honor. The board actually considers that. There was some contention that he had tested positively for drugs and he was cashiered out. The board considered that and said, we don't think that bears on his veteran status, and so they sort of dismissed the issue and moved on, and the Veterans Court did not consider it either. And quite honestly, Your Honor, I can't remember the precise details, but it did have something to do with him testing positive. Was there a medical exam that was given to him upon his discharge? I don't believe so, not upon discharge, Your Honor. There are entrance enlistment exams, but nothing upon discharge. Well, normally there is a discharge exam. That's true, Your Honor. But there's nothing in the record showing that there was a discharge exam for this particular individual. I haven't seen one either, and Mr. Kokesh says that contends that some of his records seem to be missing, and I don't know. Maybe there was one at one time and we just don't have it now. But, no, I'm not aware of a separation exam, Your Honor. Did he ask for a medical exam upon his discharge? He could have one if he didn't have one. Not that I'm aware of, Your Honor. I don't know, but I don't think he did. He's never said that he did. He was, I think, very glad to get out of there, and in view of what he says happened, that's understandable, if you credit what he says happened. As I mentioned, the Veterans Court got snagged on this issue of the second-pronged McClendon and never got to the evidence of the doctors coupled with the testimony about his symptoms both in and shortly after service. He also goes to the emergency room right after he gets out of service, and there's testimony from his father and from him about that. He was sick. The board sort of wrote this off as an upper respiratory infection, which was one of the diagnoses that was rendered in service, but he had a variety of symptoms. He had dizziness and headaches and nausea and a variety of things that could, difficulty breathing, loss of appetite, nausea, even a reference to having urinated while he was in the bed, and things that might be explained by a URI but also might not be. So our contention simply is there's evidence there from which the VA should have seen that it may be associated with service, that they didn't get him an exam, they disregarded the doctor's opinions on an assumption that really is unwarranted from the face of them, that they relied to some degree on his account of these bizarre events, and so they ignored the issue, and the Veterans Court did not get to the issue, and we think that... But what's the legal hook to have our jurisdiction apply to the case? Where is the legal aspect that grants us jurisdiction? The board, the court, excuse me, seems to have interpreted McClendon's second prong, that is the may be associated and the additional regulatory requirement of an event or injury in service to require a particular set of events, that is the ones that he alleged happened and caused the disabilities. The Veterans Court itself has come out the same month as this decision issued in the Clemens v. Shinseki case, that's 23 Vedat 1, and said that it's not proper to look at simply what the veteran says and by way of accounting for the cause of his symptoms or his medical problem, the veteran in that case had alleged PTSD, the VA said, well, he doesn't have PTSD, and the court said, yeah, but he has other symptoms of other mental illnesses, you have to consider those, and you can't just take the veteran's word for what his condition was. Following up on Judge Gares' question, though, McClendon, the lower court CAVC, explained for McClendon factors, it seems to me that your argument could be characterized as a disagreement over the application of those legal factors to the facts of this case. Your Honor, I don't know exactly, of course, what was in the Veterans Court's thinking when it did this, but the fact remains that the court said the veteran has no way of meeting the McClendon second prong, and I have to assume that the court... You're not arguing, you're not disagreeing with the test that is the second prong of McClendon, are you? No, sir. That's in the regulation. What we're saying is... So then doesn't this then reduce down to simply a question of whether the evidence complies with or meets that second prong, which is a question of fact or a question of application of law to fact beyond our jurisdiction? I don't think so, Your Honor, because the Veterans Court made an interpretation of that requirement in saying that it requires a certain thing, and the thing that it required, according to the Veterans Court, was that we have to accept the veteran's account of these events, and since we're not doing that, we're disregarding those, there's no way he was entitled to an exam. That's an interpretation. It wasn't vocalized, expressed in the decision, but I can't see how else the court could have got there. It had to have interpreted the law to be that it requires a certain event, at least. Now, maybe it did so without consciously meaning to, but nevertheless, it's an interpretation. I think that brings it within this court's jurisdiction to say the statute requires more than that. The statute clearly requires that you consider getting a medical opinion in these kinds of circumstances where the facts are not disputed as to those circumstances. And so I think it falls within this court's jurisdiction. It's a little bit tricky because the Veterans Court didn't actually say why it wasn't addressing, other than to say that the court does say, this joint appendix at 7, that the appellant has pointed the court to no other basis on which to... that an exam might be warranted, and that's simply not true. It's in the briefing, it's at A709, 717, 720, in the appendix. We did call that evidence to the court's attention. It simply ignored it because it focused on this second prong of McClendon analysis and didn't get to the other issue. With respect to the issue regarding the duty to obtain records, my understanding is that Mr. Kokesh never requested any particular records. He simply identified an incident that occurred, but didn't identify any specific records. Am I correct in my understanding? Yes, Your Honor. That's absolutely correct. And if he did not identify any particular records, then there wasn't a failure to comply with the duty to provide records or the duty to assist records, correct? Your Honor, that I have to disagree with. That's the gist of our argument. Section C-1 under 5103A, related specifically to compensation claims, requires the VA to obtain relevant records and requires them to obtain the service records, service medical records, and any other records pertaining to his military service, if relevant. And then the only requirement there is that he give enough information from which they can be located. He must adequately identify, to use the wording in the statute. Well, arguably. That's in Section B, Your Honor, which applies more broadly to all of the assistance that has to be provided by VA. And honestly, I don't know of any authority that makes it clear one way or the other whether adequately identifies also reaches over and applies to this section, dealing specifically with compensation claims. But I don't really have an issue. But we can assume that it does. The question then becomes, what does adequately identify mean? And does it mean that in the context of a veteran's claim, the veteran has to assume that the VA will greet his story with skepticism, will not be convinced, will not believe him, will want to see corroboration, and would therefore require him to point out to them that a federal program allegedly involving administration of drugs would have some records associated with it. The records were kept by the military. And our argument is simply under C-1. Those are military records. They're kept by the agency. If they exist, they are on their face relevant, and the VA had a duty to go get them irrespective of Mr. Kokesh thinking that they would be relevant in bringing them to VA's attention. So we think the adequately identifies gloss goes over the top of what he needs to describe. And the regulation, by the way, makes that requirement of adequately identifying at the request of the VA. So if VA approaches him and says, you know, you need to tell us more about these records so we can find them, then, of course, he has the duty to do so. Mr. Bowles, we're going to walk into your rebuttal time. Would you like to save some of it? I had four minutes, I think, Your Honor. Thank you. Thank you. Ms. Burke. May it please the Court, Section 5103A essentially has two lines, two avenues that VA can go down. The VA has a duty to assist the claimant and it shall make reasonable efforts to obtain relevant records that the claimant adequately identifies. Here, as the Veterans Court held, the claimant never identified any records. It wasn't a matter of an inadequate identification. There was no identification. But even more than that. The veteran here contends that he was subjected to some sort of medical experiment. Then he alleges this horrendous sequence of events that occurred under some program, presumably that was conducted in secret. What more does he need to do other than to recount the fact that he believes that this event occurred and how is he to identify any specific documents or records when there's no public announcement of what this program might or might not have been? Well, I think at the very least he could have stated to the VA that he believed records existed documenting this alleged program and that he wanted VA to obtain them. Isn't that implicit in what he was saying? Well, no, and I think maybe it's helpful to look at it just in terms of a more regular claim. If the veteran comes in and says, I am alleging a particular disability and a particular in-service event, and then leaves it at that and the VA goes and does what the VA is required to do by statute, meaning gets his service medical records and any kind of federal records that it can get its hands on, which the VA did here after multiple attempts. But there are other records that the veteran wants the VA to get, for example, in the Moore case that Mr. Koketsch cites. The veteran actually has to say, no, there's something missing. I know that you've gone and you've obtained the service medical records, for example, but I don't think they're all here. Please go get them. The veteran has the obligation to identify something that's missing that will substantiate the claim, even in a more normal situation. And the veteran had the same obligation to do that here. But how is a veteran supposed to know what records are kept in these particular experimental? He alleged certain experimental factors that were being conducted, and he was one of the individuals upon which the experiment was conducted. How is he supposed to know where and how those records are kept if, in fact, they're classified? No one even knows whether they exist or not exist. Well, there's certainly an assumption that he's making that they are classified. But let's say there are records that exist. He has to, at the very least, articulate that there are some kind of records documenting this program and that he wants the VA to obtain them. If he had at least done that, this would be a different case. Is that not implicit in the fact that he is making a claim for service connection and arguing that he was subjected to some secret program and he has no way of providing or producing records because he was subjected to this program and no records were provided to him? And isn't it enough for him to simply recant that? Well, respectfully, Your Honor, I think what the court has just stated is even more than what he stated. I don't think there's a factual finding by both the Board and the Veterans Court that he, yes, alleged that there was a program that he was subjected to, but there is no factual finding that he said there are records that I don't know whether they exist and I don't know how you're supposed to get them. He didn't even say that. And there were records of various incidents all around that time. That's correct. That might suggest that there was no such program. That's correct, and that is a finding that the Board made, and that's a very factual finding that the Board made. Is this a question of what the words of the statute mean, i.e., statutory interpretation of what it means to be adequately identified? These records, are they adequately identified, or is it an application of those words to the facts of this case? It's the latter, Your Honor. There's a factual finding in the Board's decision and in the Veterans Court's decision reviewing the Board's decision that there was no identification made and under those circumstances, no identification of documents made, and under those circumstances the Board's decision was reasonable. To follow up on Judge Moore's question, is there a statutory question as to whether adequately identifies in the statute requires more than simply describing an incident? Well, that's certainly what Mr. Kocuch would say. I mean, I think the first place to go when we're trying to figure out what the statute means is the regulation, because the VA has already interpreted what that language should mean in the context of the statute. If the Court looks at Section 3.159C, there's an articulation of what has to happen and what kind of identification a claimant has to make. That's pretty specific, though, isn't it? The identification has to be specific? Yes, absolutely. Even though a Veteran might not know whether or not those records do exist? What if this particular Veteran indicated his time of service when those experiments were conducted and said, I want any records, I would like to have any records pertaining to those particular experiments that were conducted on me during that time period? Would that be sufficient? Well, I think that would be a start. But I would like to point out to the Court, now this document is not part of the joint appendix, but it is part of the record. The records that the VA sought contain, or the request contains a request for all of his medical records and his entire personnel file. So regardless of whether he made a more specific request, which he didn't, the request that the VA made was actually quite general and should have generated pretty much anything that happened during this two-month period of time. With that general request, all of those records would be supplied. Is that what you're saying? I would think so. I mean, it's a difficult case to talk about because if, of course, if Mr. Kocatch is correct that there was a secret program that's trying to be concealed, and we're assuming that to be true, then I'm not sure how to answer that. But the best that we can say is that the VA made its normal request for all of his medical and personnel files, which, of course, under the normal course, should have generated all of Mr. Kocatch's documentation during his two-month service. So if they stamp all of those records secret, then they're never available to anyone. They can't even be told that they exist. Well, I mean, frankly, I don't know how such a secret program would operate. But, I mean, I suppose if we were to assume that Mr. Kocatch is correct. Hypothetically, would that happen? I'm not even prepared to say hypothetically that could happen. That seems like a dangerous statement for me to make. I think the point is that Mr. Kocatch didn't identify any, he didn't even identify a category of record that the VA should go and seek. So it's not just a matter of him being unable to identify or think of the kind of record that he should be looking for in a secret program. He didn't even make a general request for a category of documents for this alleged program. One aspect that bothers me about the record is that there is a standard operating procedure to have a person who leaves the military to have a medical examination, a discharge examination. There's no such record in this person's file that there was such a medical exam taken. Is that correct, or is that just a missing record that's not in? Well, I mean, I heard counsel say that he is not aware of any, I'm certainly not aware of any in the joint appendix or the record that I've seen. It certainly happened before. For example, in the Moore case where we thought we had all of the records and we didn't. So I hesitate to say that it absolutely doesn't exist. But if the court would like us to do a more thorough search, we can do that. But it's not anything that I've seen. I don't think it's up to the court to order it. I think it's up to the VA to do it on its own. Well, the reality is that the record contains many documents regarding Mr. Koketsch's visits to the doctor during his medical service, during his two-month period. It could be that there wasn't any discharge exam done, or it could be that the record doesn't exist. But we don't know the answer to that question. I think Mr. Koketsch would know the best, and I think what I heard his counsel say is that it's quite possible that there wasn't an exam done, which would explain what's not in the record. Just moving on very quickly to the second issue, I just want to point out what I think is a hole in Mr. Koketsch's argument. The Veterans Court didn't say that it's only the veterans' testimony that can be considered regarding whether there was an in-service event. The Veterans Court, I think quite correctly, articulated the requirements of the statute and the regulation, which is that first, there be evidence of a disability, and second, that there be evidence establishing an in-service event, which is a very high standard. It's higher than the nexus standard. The evidence in the record, well, obviously this is a factual question, but to the extent that the Court gets to it, both the Veterans Court and the Board quite clearly found that there was no evidence establishing an in-service event for any of Mr. Koketsch's many disabilities. Thank you. Thank you, Ms. Burke. Thank you. Mr. Bolzner, we'll give you two minutes for your question. Thank you, sir. As your honors, I think, have gotten to, if it's a secret program, how is the veteran going to know what sorts of records will exist, where they'll be, or how to get at them? It's very difficult to know how the veteran, even if he were to assume that he would need to request such records, would figure out what they are. He told them where the program was. He told them when it happened. He gave them all the information that they would need to ask a question. And the question I'd like to point out, especially in the context of the veteran system, is a very simple one. A letter to the Department of Defense, Department of the Navy, do you have records of this program that was conducted, the Great Lakes Recruit Training Command, during these dates that involved this, and involved this gentleman? It's a very simple request that would have taken care of this. They didn't make it. The bigger point, I think, is that you get to- Did your client make that request? He did not, your honor, and that goes to my next point, which is- Well, why should that not be a requirement? If a veteran wants a record, what significant burden does that place on the veteran in saying, well, you need to make some requests, and it can be as simple as the general request you just outlined? Your honor, if he had an idea that he would need to get records to corroborate his story, he very well might have fought to do that. But the question is, can you put on a lay veteran who has no counsel the duty to figure out, oh, VA is not going to believe me and is going to want corroboration. I'd better go tell VA they ought to go to the Department of Defense and get some records. I think that shifts the burden onto a veteran to figure out what's going to be relevant when it's VA that knows that. VA knows very well that it might expect corroboration. In the PTSD context, for example, there's a regulation that says, we're inclined not to believe accounts of traumas and service years afterwards, so you have to go get corroboration. They tell the veteran he has to do that. In this case, there was no such disclosure, and the veteran had no way of knowing that he should have needed to go get corroboration. Thank you, Mr. Bozeman. Case is submitted.